Curia, per

Butleu, J.
In connection with the facts stated in the report of the Recorder, the following facts were stated and admitted on the hearing of this cause : That John Yeomans, residing in Florida, assuming to be the absolute owner *of Brister, sent him to Thomas N. Gadsden, a broker, to be sold as a slave. Under the impression that Brister was a slave, Gadsden committed him to the workhouse of Charleston, of which defendant was keeper, for safe keeping until he could effect a sale. Yeomans’ instructions were that Gadsden should sell Brister to some one who would carry him to Yew Orleans, stating that Brister would endeavor to make such statements as to procure his discharge, but that Gadsden must not believe him, &c. After Brister was committed, he made such communications as to induce the keeper of the workhouse to write to one Archibald Clark, residing in Georgia, to know if Brister was a free man, as stated by himself. Clark returned an answer, saying that he was, and that he (Clark) was his guardian; and also sent an affidavit of the same purport; upon which, the attorney of plaintiff made a demand that Brister should be released. In the mean time, Gadsden wrote to Yeomans of what had passed. Yeomans then sent the contract, noticed by the Recorder, showing the true relation between himself and Brister, to wit: a personal obligation for the services of Brister for a limited term. From this, Gadsden became satisfied that Brister was not liable to be sold as a slave, and called and paid the fees of the workhouse, and at the same time discontinued any further agency or control over Brister. Under this state of facts, the plaintiff was put to his action of ravishment of ward, allowed by the Act of Assembly of 1140,(a) by which it is provided that the Court, &c., may appoint a guardian for any person of color claiming to be free, and that such guardian may bring an action in the nature of ravishment of ward against any person who shall claim property in, or who shall be in the possession of, any such negro, &c.; and it is further provided, that such defendant shall and may plead the general issue on such action brought, and the special matter may and shall be given in evidence, &c. Such was the state of pleadings in this case, the true issue of which was to try Blister’s right to freedom. From the evidence on the trial, it was unquestionable that his liberty had been put in jeopardy, and that he was entitled to be discharged from custody, as a free man of color. Gadsden committed and Wesner received the plaintiff into custody, without any wilful participation in the infamous fraud attempted to be committed by Yeomans; and perhaps it would not be ⅜⅛ to hold the latter ^liable for damages, as for a trespass in the wrongful taking and imprisonment of the plaintiff. In general, I should think that he ought not to be held liable to any action by a third person for negroes committed to his custody, until after demand made *91 and a wrongful detention and conversion on his part against the rights of the true owner; as by the City laws, sec. 5th, page 356, it is made the duty of the keeper of the workhouse to admit and coniine all slaves delivered into his charge or custody by the order or in behalf of their respective owners, or committed by the intendant, &c. The defendant was therefore justified in receiving Brister into his custody, from his ostensible owner. But this justification ceased after Gadsden paid the fees and discontinued his control over Brister. From that time the defendant held him on his own responsibility, or by the direction of the commissioners of the workhouse, and had no further right to claim exemption from liability to this action. Indeed, without the defendant had been liable, the plaintiff would have been without remedy, so far as his actual imprisonment was concerned. A suit against Gadsden, if any action would have lain against him, after he had discontinued his agency in the matter, would have afforded no relief; and Yeomans was beyond the jurisdiction or reach of legal process. The necessity of his situation gave him a remedy afforded by this action. The Act, however, under which this action is brought, is explicit and peremptory in its provisions, that any negro claiming to be free, has a right, by guardian, to bring an action of trespass, in the nature of ravishment of ward, against not only any one claiming property in, but against any one having the possession of, such negro. The defendant, who had the actual possession of the man claiming his freedom, was therefore liable to this action, and can take nothing by his motion. Motion dismissed.
See Huger vs. Barnwell, 5 Rich. 275. An.
The whole Court concurred.

 7 Stat. 397, § 1. An.